AIMEE REALTY CO., Appellant, v. HALLER et al., Respondents.

St. Louis Court of Appeals, December 17, 1907.

1. **MECHANIC'S LIEN: One Contract for Several Houses: Separate Liens:** Where a painter made a contract with the owner of a number of houses to paint and glaze all of said houses, and where it did not appear that the lots on which the houses were situated were contiguous, he might file a separate lien against each house and bring suit to enforce each lien.

2. **INJUNCTION: Mechanic's Lien: Adequate Remedy at Law: Counterclaim.** Where a contractor made one contract with the owner of twenty-five houses to paint them all, and was entitled to file a separate lien, against each house and enforce each by an action before a justice of the peace, and where the owner had a meritorious counterclaim, to offset the balance due the contractor which could not be interposed in an action before a justice of the peace, he might maintain a bill of equity to enjoin the prosecution of suits to enforce the liens.

3. ———: ———: *Multiplicity of Suits.* The owner could also maintain his action for injunction in order to prevent a multiplicity of suits in the prosecution of the several actions to enforce the liens, where it did not appear that the several suits to enforce liens could be consolidated and where the owner had a meritorious counterclaim and all questions of law involved in all the contemplated suits could be settled in the one action.

4. ———: ———: ———. The rule that injunction will not be granted to restrain the prosecution of a multiplicity of suits unless the complaining party has first had the merits of his case determined in at least one suit by a court of law does not obtain in this State.

5. ———: ———: ———: **Multiplicity of Liens.** While equity may be invoked to prevent by injunction a multiplicity of suits to enforce mechanics' liens it can not be invoked to enjoin the filing of the liens.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

REVERSED AND REMANDED (*with directions*).

*John A. Blevins* for appellant.

(1) Defendants failed to comply with their contract to paint the twenty-five houses and for that reason, they were entitled only to such remuneration for their services as the benefit conferred upon plaintiff was reasonably worth. As they had been paid upon account more than the benefits conferred were reasonably worth, the plaintiff was entitled to compel them to account for the money received by them over and above the value of such benefits, and in the meantime to restrain them from carrying out their threat to file numerous liens on plaintiff's property, thereby casting a cloud upon the title, and to enjoin them from bringing numerous suits against plaintiff, whereby plaintiff would become involved in vexatious litigation and put to great expense on account of costs and attorneys' fees. To compel an accounting, to prevent the casting of a cloud upon title to property, and to prevent a multiplicity of suits, constitute ancient and well-established heads of equity jurisdiction. Bispham's Equity (6 Ed.), secs. 482, 484; State ex rel. v. Wood, 155 Mo. 480; Damschroeder v. Thias, 51 Mo. 104; Yeats v. Ballentine, 56 Mo. 535; Gardner v. Terry, 99 Mo. 523; Coal Co. v. St. Louis, 130 Mo. 325; Sibley v. Casey, 6 Mo. 165. (2) The action of the defendants, as shown by the allegations of the petition, was a fraud upon the rights of the plaintiff, and equity will assume jurisdiction on that ground to redress plaintiff's wrongs and compel an ac-

counting, and to prevent defendants from carrying into execution their threat to coerce plaintiff, by the use of legal process and numerous lawsuits, into submission to their unjust demands.    1 Story, Jurisprudence, secs. 64, 80, 187; Stewart v. Caldwell, 54 Mo. 539; High on Injunction (2 Ed.), sec. 47; 16 Am. and Eng. Ency. Law, p. 367.    (3)   When a court of equity once acquires jurisdiction of a cause, it will retain jurisdiction to do complete justice between the parties.    Hogan v. Bank, 182 Mo. 319; Baker v. Daniel, 178 Mo. 447.

*Chester H. Krum* and *P. A. Griswold* for respondent.

In the first place, merely because there happened to be a number of houses, each of which might be the subject of a suit to enforce a mechanic's lien, does not, and did not, create the possibility of a multiplicity of suits to prevent which appellant claims is the favorite ground of equitable interference.    Scott v. McFarland, 70 Fed. 280; 1 Pomeroy's Equity Jurisprudence, p. 378. Wherever the actions at law are of such a nature that they may all be consolidated into one and be tried together, equity will not interfere, since the legal remedy is complete, certain and adequate.    Peters v. Prevost, 19 Federal Cases 366.

STATEMENT.—A demurrer was sustained to appellant's petition, which is in the nature of a bill in equity, to enjoin the respondents from filing divers mechanics' liens on appellant's property and instituting suits to enforce them.   Appellant stood on the petition and final judgment having been entered against it, prosecuted this appeal.   According to the statements of the petition the respondents are partners under the firm name of Haller Brothers, and engaged in the business of painting and glazing in the city of St. Louis.    Appellant is the owner of twenty-three lots in City Blocks Nos. 2097 and 2098, on Tower Grove Heights Addition to the city

of St. Louis.    It was at the time of the filing of the
petition, and had been for some months previously, en-
gaged in the erection of twenty-five dwelling houses on
said lots, and, in the course of the work, had entered
into a written contract with respondents whereby the
latter undertook, for a consideration, to paint and glaze
said dwelling houses.    The petition then states various
specifications about how the work of painting and glaz-
ing was, according to the terms of the contract, to be
finished, and alleges a failure on the part of respond-
ents to comply with their contract in certain particulars
mentioned, and that in consequence of said breaches by
respondents appellant was damaged in the sum of
$2,000.    The petition further states the considera-
tion appellant was to pay for painting and glazing said
twenty-five houses was $4,900, or at the rate of $196 a
house; that during the progress of the work appellant
paid respondents on said contract various sums, aggre-
gating $4,200; that these payments were made at re-
spondents' request and for their accommodation, though
by the terms of the contract appellant was not com-
pelled to make any payment until all the work on the
houses was completed by respondents; and, further, that
at the time the several payments were made appellant
was unaware of the failure of respondents to comply
with the specifications of their contract.    This failure
consisted in not putting on the agreed number of coats
of paint, failing to paint the iron work on the buildings,
using inferior materials and doing the work generally
in such a defective, unskilful and unworkmanlike man-
ner as to cause the paint to scale.    It was further
averred the work on the houses except the paint-
ing and glazing which respondents were to do, was fin-
ished, and appellant had entered into contracts for the
sale of several of the houses and had guaranteed the
purchasers against any liens or claims by respondents
or others.    It is further alleged respondents have so

completely failed to carry out the terms of their contract, that appellant has been greatly damaged and will be compelled to pay a large amount of money in order to put the dwellings in the condition they would have been in if respondents had complied with their contract; that appellant has sustained much greater damage by respondents' breach than would offset any balance whatever, due, or that yet may be due, to respondents from appellant; that the claim of respondents on account of the balance that will be due when they shall have completed all the work under the contract is $1,000, and the damage sustained by appellant on account of respondents' breaches is about $2,000; that appellant is not indebted to respondents in any sum whatever; that it has paid them more than they are entitled to and when the setoff and counterclaim based on respondents' breaches is considered, they will be found to be indebted to it more than $800 on account of money heretofore paid them; that respondents threaten to harass and annoy appellant and the purchasers of the houses and tenants of appellant, by filing mechanics' liens on account of painting and glazing and for extra work alleged to have been done; respondents claiming all but two houses have been completed and that they (respondents) have completed all the work required of them under the contract; that respondents insist on the payment of their demands before they will finish the contract, and threaten to serve notice on appellant's tenants and the purchasers of said houses, of the intention to file mechanics' liens thereon, and to create the impression that the title to the houses is defective and uncertain, and to frighten away other prospective purchasers, and to involve appellant in a multiplicity of suits and costs to defend such actions. It is further averred the contract between appellant and respondents to paint the houses is single, complete and indivisible and by its terms respondents must complete the work

before filing any liens or bringing any suits against appellant; that respondents have already filed one lien suit against the property and threaten to file others; that in doing so they are moved by a desire and purpose to harass and annoy appellant by vexatious litigation, and to cast a cloud on the title of appellant's real estate, and compel it to submit to their unjust demands, and to waive their numerous breaches of the contract, and that unless restrained, respondents will file numerous suits and liens and cast numerous clouds on the title of appellant's property, and involve appellant in a multiplicity of suits, and cause it to spend large sums to defend the same, and will split up their cause of action under the contract, and compel appellant at great cost to defend said suits; that if respondents are permitted to take such course, appellant will be prevented from presenting its counterclaim and set-off arising out of respondents' breaches of the contract, and to recover the excess of money it has already paid out on account of said excess on said work, and it will be harassed and annoyed by vexatious litigation; that though it was under no obligation to do so, appellant has offered to file a sufficient bond, guaranteeing the payment by it of any sum of money that might be found to be due respondents for work done by them under the contract; but respondents have refused to accept such guarantee and insist they will file separate suits to enforce said liens. It is further averred respondents are insolvent and have no property out of which a judgment against them can be satisfied. The prayer of the petition is that respondents and each of them and their agents, assignees and attorneys, be enjoined from giving notice of their intention to file liens on any of said houses; and, further, that they be enjoined and restrained from filing any liens, as original contractors or as subcontractors, or otherwise, on any of said lots, or houses, and be required to account to appellant for the moneys paid.

to them by it, and that after allowing respondents the value of the work done and to be done by them, in the sum of $3,000, appellant have judgment against them in the sum of $1,000, and for other proper relief.

GOODE, J. (after stating the facts.)—There are two meritorious grounds on which a court of equity will entertain this suit. One is that otherwise the appellant might be cut off from relief on its counterclaim. Though all the work of painting and glazing was to be done under a single contract, the respondents may file separate liens on each house. Indeed, it may be they would have to do so, because, it is not stated in the petition the lots are contiguous, which is the only instance when it is allowable to file one lien on several lots. [R. S. 1899, sec. 4227.] The decisions in mechanics' liens cases permit separate actions to be brought to enforce each lien for the value of the material and labor furnished on the respective houses and do not apply the rule against splitting demands. [Kick v. Durste, 45 Mo. App. 134; Christopher & Simpson, etc. Co. v. Kelly, 91 Mo. App. 93.] Respondents might institute separate actions before a justice of the peace, and as the amount of appellant's counterclaim exceeds the jurisdiction of a justice, it could not prevent judgments from going against it or establish its counterclaim. Moreover, the counterclaim might take on an equitable nature to recover money paid under a mistake of fact, and of this a justice of the peace would not have jurisdiction. [Hicks v. Martin, 25 Mo. App. 359.] In view of these facts, in connection with the averment that respondents are wholly insolvent, it is apparent appellant might be made to pay what they claim, without having any effective recourse against them for the damage sustained by their alleged breaches of the contract. One of the favorite grounds of equity cognizance to restrain proceedings at law, exists when in the

courts of law, the defendant cannot avail himself of a valid equitable defense. [Bipsham, Eq. (6 Ed.), secs. 407, 409, 418.]     And sometimes a defense by way of set-off or counterclaim cannot be asserted at law and then equity will take jurisdiction.     [Id. sec. 327, and cases cited in notes 2 and 3.]     This is especially true where the party against whom a set-off is claimed is insolvent.     [Railroad v. Bowring, 103 Mo. App. 158, 166, 77 S. W. 106; Scott v. Armstrong, 146 Mo. 499.]

The second ground on which equity should take cognizance is to prevent a multiplicity of suits.     In our opinion the present case clearly falls under that head of equity jurisdiction.     It is an instance of one party being threatened with successive actions at law by another party, when the actions arise out of a common transaction and involve the same questions of fact and the same legal propositions.     Where these conditions exist, a court of equity may interfere to restrain the prosecution of actions at law if justice will thereby be subserved; that is to say, if the litigation will be circumscribed and annoyance and expense diminished, and still the rights of the parties preserved.     [1 Pomeroy, Eq. Jur. (2 Ed.), sec. 254.]     The rule is not applied when the several legal actions might be consolidated; but in the present instance the right of appellant to have them consolidated is   precarious.     They might be instituted at different times and before different justices of the peace and then, of course, they could not be consolidated.     [R. S. 1899, sec. 3953.]     And if different actions were instituted in the circuit court, it seems doubtful whether or not they would fall within the class of liquidated demands which alone may be consolidated in the discretion of the court.     [R. S. 1899, sec. 749.]     It is clear that whatever legal remedy the appellant may have, it is neither plain nor adequate, and when this is true, and the cause falls under one of the heads of equity jurisdiction, a   court   of

chancery will grant relief.    [McDaniel v. Lee, 37 Mo.
204; Biddle v. Ramsey, 52 Mo. 153.]    The prevention
of a multiplicity of suits is one of the heads of equity
jurisdiction, and when the circumstances are appropri-
ate, chancery will entertain a cause simply to prevent
the annoyance and expense of repeated legal actions.
[Sylvester Coal Co. v. St. Louis, 130 Mo. 323, 32 S. W.
649; 1 Pomeroy, sec. 249.]    It must, of course, appear
the petitioner . for   equitable relief has a meritorious
cause.    [1 Pomeroy, sec. 250.]    This appears in the
present case and also that the cause of appellant is not
only meritorious, but one which it might find difficulty
in asserting at law.    At the same time it is not con-
ceivable how any issues could arise regarding the de-
mands of respondents, which could not be settled and
determined by a court of equity in one suit.    The ju-
risdiction of equity to enjoin legal actions, or grant
other appropriate relief, in order to prevent unnecessary
litigation, has been exercised in instances where the cir-
cumstances were not, so far as the point in hand is
concerned, materially different from the case at bar.
That is to say, jurisdiction was assumed by the equity
tribunal in order to prevent   the   party   complained
against, from instituting against the complaining party,
successive legal actions involving the same questions
of law and fact which might as well be determined in
one as in many cases.    The question is soundly eluci-
dated in Railroad v. Dowe, 70 Tex. 5, wherein it ap-
pears   certain   contractors who ·had worked for the
railroad company, had issued to their laborers a large
number of written obligations known as "contractors'
checks," which had been indorsed by the payees in blank
and all of them assigned to defendant Dowe, who was
proposing to institute thirty or more actions against the
railroad company.    The bringing of such actions was
restrained.    In Railroad v. Mayor, 54 N. Y. 159, it ap-
peared   the   defendants, the mayor of New York and

others, had instituted seventy-seven actions against the railroad company to recover penalities prescribed by a city ordinance for running cars without a license. The company brought an action in equity to restrain the prosecution of more than one of said actions until that one was heard and decided, and this relief was given. A more striking case is Norfolk Hosiery Co. v. Arnold, 143 N. Y. 265. Those parties had entered into a contract by which the plaintiff had agreed to pay specified royalties for the use of an invention. It paid the royalties for several years and then refused to pay, alleging the contract had been induced by fraud. Successive actions for several monthly installments were instituted by the defendant and other actions were threatened to be brought as the installments fell due. Those facts were held to present a strong case for the interposition of equity to prevent unnecessary and multiplied actions. Quite similar is the case of Tarbox v. Hartenstein, 63 Tenn. 78, in which a party employed at $25 a week was restrained from suing separately for each week's wages. In Cuthbert v. Schaubt, 13 N. Y. Supp. 385, it appeared one of the defendants had commenced ten actions of ejectment against the plaintiff to recover an interest in certain lands, and the other defendants had threatened to institute similar suits. The land consisted of ten parcels and an injunction was granted against the prosecution of actions for more than one parcel until one action was determined. In Featherstone v. Carr, 132 N. C. 800, the equitable remedy was allowed to prevent a landlord from instituting successive actions for monthly installments of rent, it appearing the whole matter could be settled in one case. According to the rule in many jurisdictions, an injunction would not be granted to restrain the prosecution of successive legal actions on the ground of avoiding a multiplicity of suits, unless the party complaining in equity had first had the merits of his cause

Aimee Realty Co. v. Haller.

determined in at least one instance by a court of law.
But this rule does not prevail in all jurisdictions, and
according to the decision in Sylvester Coal Co. v. St.
Louis, 130 Mo. supra, is not enforced in this State.
That case was a suit in equity by several coal compan-
ies to enjoin the city of St. Louis from enforcing the
provisions of a certain ordinance providing for the weigh-
ing of coal and other merchandise on public scales, and
the furnishing by the city comptroller at a given price,
of blanks or certificates for the use of all weighers on
private scales.    The ground of the suit in equity was
that the ordinance involved was invalid and void, and
the defendants in the cause were threatening to
enforce it by successive actions to recover penalties for
each violation.    It was held to be no reason for denying
equitable relief that in each prosecution the coal com-·
panies might plead successfully the invalidity of the
ordinance; that this did not give them an adequate
remedy, as they were entitled to be protected from the
annoyance of a multiplicity of suits brought on a void
ordinance.    It was also ruled there was no good reason,
under the present system of procedure in code States,
where equity and law are administered by the same tri-
bunal, why relief against a multiplicity of suits should
not be granted in the first instance by injunction, with-
out waiting to have the legal questions involved deter-
mined at law.

Appellant asks to have the respondents restrained
not only from instituting separate suits, but from fil-
ing separate liens.    We know nothing of equity enjoin-
ing a multiplicity of liens.    The statutes give respond-
ents the right to file different liens for their demands
and with this positive statutory provision, a court of
equity will not interfere.    It is true appellant claims
respondents are not entitled to a lien because they
have been overpaid, but that might be said in every case
wherein a builder or contractor sues.    Nor is it neces-

sary to restrain the liens in order to give appellant the full measure of relief it needs. It will be protected from unnecessary and harassing litigation by determining the issues in one suit wherein it will have an opportunity to establish its counterclaim if it is meritorious. An equity tribunal is perfectly competent to settle all the issues in one suit, no matter how many parties there may be on either side. It can determine the rights of the appellant and its purchasers and tenants, and of the respondents and every one else interested in the property.

The judgment is reversed and the cause remanded with directions to the court to overrule the demurrer to the petition and permit the respondents to answer if they are so advised. All concur.