### HAMNER v. GARRETT et al.

(Court of Civil Appeals of Texas. Dec. 3, 1910. Rehearing Denied Jan. 7, 1911.)

1. INJUNCTION (§ 26*) — JURISDICTION—MULTIPLICITY OF SUITS.

In an action against purchasers from a vendee under an executory contract to convey, brought by the landowner to enjoin the purchasers and such vendee from maintaining suits against plaintiff, based upon sales to such purchasers, circumstances *held* not to authorize the suit on the ground of multiplicity of suits; the fact that numerous independent persons hold separate instruments upon which separate suits could be brought not authorizing injunctive relief, at the suit of the one claimed to be liable, to restrain such suits, though the validity of the instruments could be attacked upon a common ground.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 24–49, 54–61; Dec. Dig. § 26.*]

2. ACTION (§ 47*) — JOINDER — CONTRACT IN TORT.

Causes of action ex contractu and ex delicto cannot as a rule be joined.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 469–489; Dec. Dig. § 47.*]

3. INJUNCTION (§ 118*)—ALLEGATIONS OF PETITION.

The petition in an action by an owner of land against his vendees under an executory contract to convey and the purchasers from such vendees to enjoin the maintenance of actions against plaintiff, based upon contracts made by such vendees by reason of alleged misrepresentations by them to the purchasers that plaintiff was the president of a company holding the land for sale, was insufficient against such vendees where it did not show that they were asserting any rights under the contracts made by them, or that any one was misled to his damage, so as to impose any liability upon plaintiff by their representations that he was president of the land company.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. § 118.*]

4. DISCOVERY (§ 3*)—RIGHT OF ACTION.

Since the enactment of Rev. St. 1895, art. 2293, giving a party the right to examine opposite parties as witnesses to procure information for maintaining an action or defense, the equitable doctrine of discovery has no application.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. §§ 3, 4; Dec. Dig. § 3.*]

5. INJUNCTION (§ 192*) — ACTIONS — DEFENDANTS.

An injunction will not be issued against unknown persons who are not made parties to the suit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 412; Dec. Dig. § 192.*]

Appeal from District Court, Mitchell County; Jas. L. Shepherd, Judge.

Action by Ed J. Hamner against B. N. Garrett and others. From a judgment dismissing the petition, plaintiff appeals. Affirmed.

See, also, 132 S. W. 951.

Ed. J. Hamner and Stephens & Miller, for appellant. W. P. Leslie, M. H. Baughn, Gross & Allen, W. B. Crockett, F. G. Thurmond, and L. W. Sandusky, for appellees.

CONNER, C. J. The petition herein considered is too voluminous for insertion, but appellant thus presents his case, viz.:

"This was a suit for injunction filed in vacation, brought by the appellant, alleging substantially as follows:

"(1) That on and prior to April 15, 1907, he was seised and possessed of a half section of land in Mitchell county, Tex., on which date and relative to which he and the appellee Garrett entered into a contract, by the terms of which appellant agreed to sell to Garrett said half section of land upon terms whereby Garrett was to put the land upon the market, and to sell said lots at not less than the specified prices according to schedule attached, and was to receive the first $10 paid on such sale. The balance was to be deposited in the Colorado National Bank until the sum of $8,000 was paid by Garrett to appellant, when appellant was to make a deed to all of the property to Garrett or to the purchasers under his sales. In said contract Garrett bound himself that appellant would receive $5,000 by December 31, 1907, or the said contract should be abrogated, but if $5,000 was paid to appellant on or before December 31, 1907, Garrett was then to pay appellant $3,000 on or before May 1, 1908, with interest thereon; said contract being an optional executory contract of sale with said Garrett upon the terms and conditions set out in the said contract, a copy of which was attached to the petition.

"(2) That after the 15th of April, 1907, and prior to June 22, 1907, Garrett offered for sale the lots on said land, and appellant alleges his belief on information that Garrett effected a few executory contracts of the sale of said lots, but that the number and the names of the purchasers, or their residence, is not known to appellant and Garrett refuses to disclose same to him. That during said time appellant had nothing whatever to do with the sale of said lots by said Garrett.

"(3) That on June 22, 1907, the appellee Garrett made and entered into a contract with the appellees Woodard, Woodard, and Woodard, in which the Woodards assumed three-fourths of the responsibility of the appellee Garrett under the contract with appellant, and the Woodards obligated themselves to sell the lots mentioned on the following terms: 300 of said lots were to be sold on the Oklahoma plan at $60 each, and the said Woodards were to have three-fourths of the profits accruing from said sale, and all the moneys were to be deposited in the Colorado

National Bank until the sum of $8,000 had been so deposited. Said contract further provided that the Woodards would be allowed 25 lots to offer as premiums to the sale of the other lots under the Oklahoma plan, and that two four-room cottages were to be built and completed before the day of the drawing, and should be paid for out of the profits of the sale. Copy of that contract was attached to the petition, which contract evidenced an agreement of partnership between appellee Garrett and the Woodards, and with which the appellant had no connection or knowledge, and did not consent or agree thereto.

"(4) At the time of the execution of this last-named contract, appellee Garrett and the Woodards entered into another contract, wherein they constituted themselves a partnership under the firm name of West Colorado Land Company, for the purpose of promoting the sale of the land and town lots mentioned in the pleadings. In this contract J. W. Woodard was named as president, and appellee Garrett was named as vice president, R. E. Woodard second vice president, and J. H. Woodard secretary and treasurer. Copy of this contract was also attached to the pleadings.

"(5) Appellant alleged: That the Oklahoma plan mentioned in the contracts attached to said pleadings contemplated that each purchaser did not become the holder or owner of any lot, but that each purchaser procured should receive a certificate from the appellees, by the terms of which he was entitled to an undivided interest in all of said lots proportioned to the number of lots, and that, after the issue of the certificates equal to the number of lots to be conveyed, the lots should be conveyed to a trustee named by the holders of the certificates, and the ownership of each separate and particular lot should be determined by a drawing. Upon information appellant alleges that after the 22d of June, 1907, appellees did not sell any certain and particular lots, but only attempted to sell the certificates outlined, and that they did sell some certificates the exact number of which, and to whom sold, appellant is not advised, but that the appellees do know the number sold, and to whom sold, and where the purchasers reside. That appellant had nothing whatever to do with these sales, and did not act with the appellees or either of them in making the sales and is not bound by them.

"(6) That prior to June 22, 1907, no sums of money were paid appellant, or deposited for him as required by the contract, but subsequently thereto money was deposited to the credit of the Ed J. Hamner land account in the Colorado National Bank, aggregating up to the 21st day of January, 1908, the sum of $1,219.60, and that thereafter, and up to February 1, 1908, the further sum of $29.70 was deposited, and that after that date, and prior to the 1st day of April, 1908, the further sum of $159.90 was deposited making a total deposited to the credit of the Ed J. Hamner land account in the Colorado National Bank the sum of $1,409.20.

"(7) Appellant averred: That prior to January 1, 1908, neither the appellee Garrett, nor any of the other appellees, nor any one acting for them, or in their behalf, ever paid to appellant, nor did appellant ever receive any money whatever, upon his contract with Garrett, and that all of the moneys deposited in the Colorado National Bank by Garrett were deposited to the Ed J. Hamner land account, and so stood on January 1, 1908, and until January 21, 1908. Wherefore, by the terms of the contract appellant had with Garrett, it was forfeited. That appellant on the 11th day of January, 1908, being advised by Garrett that he could not comply with his contract and that the same should be forfeited, entered into a new contract with said Garrett after forfeiting the old contract.

"(8) That under the new contract entered into January 20, 1908, Garrett paid appellant the sum of $1,219.60, deposited as aforesaid, and the further sum of $280.40, making $1,500, and thereupon appellant executed a general warranty deed conveying the land referred to in the contract for $1,500 cash and the execution of three vendor's lien notes, one due June 29, 1908, for $1,560, one due December 29, 1908, for $2,700, and another due June 1, 1909, for $2,800, which notes were placed, together with the deed, in the Colorado National Bank, and it was provided by the contract entered into between appellant and Garrett that, if he failed to pay the first note to mature June 29, 1908, the appellant could recall all the papers and forfeit all payments made on said notes; that Garrett failed to make the payments on said notes, and the contract was forfeited.

"(9) That, when appellee Garrett failed to pay said note and the contract was forfeited, the deed was withdrawn, thereby all right and claim of the appellee Garrett or any of the other appellees to the land or any part thereof except lots sold by Garrett prior to June 22, 1907, ceased and determined, and full and complete legal and equitable title to the land reverted and reinvested in plaintiff.

"(10) That appellee Garrett, without the knowledge or consent of appellant, caused to be printed advertising literature, in effect representing that the West Colorado Land Company was a corporation of which appellant was president and Garrett was secretary and treasurer, all of which was false, and was unknown to appellant until about the 21st day of May, 1907, and, as soon as same was learned by appellant, he immediately in writing disavowed any connection with or responsibility for such literature or the West Colorado Land Company, and demanded that Garrett cease to use his name in connection therewith, but appellant alleged that the appellee Garrett, acting and colluding with the

other appellees and their various agents whose names are unknown to the appellant, but are known to appellees, represented to divers and sundry persons that the West Colorado Land Company was a corporation of which appellant was president, and induced persons to believe the truth thereof, and entered into dealings with them based thereon, and sold various certificates to various persons in various parts of the state, among others parties represented by the appellant Baughn, who is an attorney, and that the said Baughn has instituted one suit against this appellant in Palo Pinto county, and is threatening to bring divers and sundry other suits against this appellant in Palo Pinto county for amounts so small that such causes cannot be appealed to the Court of Civil Appeals, and it will deprive the appellant of his right to be sued in Mitchell county, Tex., and compel him, at great expense, to wit, more than $500, to recover which he has no adequate remedy at law, to defend many and various vexatious suits in counties other than in the county of his residence, and in which suits there will be no right of appeal above and beyond the county court. That appellees Garrett and Woodard, colluding with other parties, have caused to be brought against this appellant two suits in Mitchell county, Tex., and have interpleaded appellant as a partner in said West Colorado Land Company, and are seeking to hold him liable for the acts of the said appellees, with which appellant had no connection. That the amount in controversy in each of said suits is so small that the right of appeal higher than the county court of Mitchell county, Tex., does not exist.

"(11) That the appellees McCoun and Keith, represented by the appellee Leslie, have filed suits in the justice court against the appellees Garrett and Woodard, and named appellant as one of the partners for $60 each, and that the appellee Sandusky threatens to bring a suit for $60 against appellant as a party, in none of which suits can appeal be had to the Court of Civil Appeals. That said suits are without foundation and untrue, and appellees are not entitled to recover therein as against appellant, but that same are brought with the intention and expectation of annoying and harassing the appellant, thinking it will compel him to pay the small amounts therein involved rather than defend the same. And other suits are threatened to be brought in similar amounts and in similar manner by said appellees' lawyers.

"(12) Appellant avers that appellees and their agents and those acting under them, whose names are unknown to appellant, but are known to appellees, have in many and different parts of the state extending from El Paso to Texarkana, and from Palo Pinto county to Travis county, sold sundry certificates on the Oklahoma plan, with which appellant has no connection, and are encourag-

ing and advising the purchasers of said certificates to bring suit against appellant in the counties of the residence of such purchasers, and compel appellant to defend such suits at great expense or buy his peace by paying money for which he is not liable, to recover which expense appellant has no adequate remedy at law, for that the amount in controversy in each of the suits is so small that the expense of the defense in any of them would in all probability be greater than the amount involved, and said amounts are not appealable to our Court of Civil Appeals.

"(13) Appellant alleges that he has at all times, and is now, able, ready, and willing to stand by and abide and perform each and every provision of his contract, and offers to convey the land or any part thereof to appellees or either of them or their nominees upon being paid the purchase price according to the contract, and appellant offered to do any and all manner of equity required of him by the court. Therefore appellant prayed, for as much as he was remediless by the strict rules of the common law, and is only relievable in a court of equity, that he have judgment by the court construing the nature and effect of each of the contracts pleaded, that the appellees and each of them be required to discover the names of each of the parties to whom certificates were sold, and that such purchasers be made parties hereto, and, if it be determined that this appellant is liable, then appellant avers his willingness and ability to pay such sums, and all of them, and he offers to do so, and prays that he may have judgment against the appellees jointly and severally for such sums as may be charged against him, and for an injunction restraining the defendants, their agents, etc., from claiming or pretending or representing that appellant is or ever was a partner with them or either of them, or is liable with them, and restraining the appellees, their agents, etc., from interpleading appellant in any suit brought against them because of the sale of such certificates by them or their agents, and prohibiting them from aiding or encouraging purchasers of any such certificates from instituting suits against appellant in any court, and that all matters be determined in this action, etc.

"To this petition are attached as exhibits the contracts alleged therein. Appellees all answered. At a regular term of the court thereafter the appellees Woodard and Garrett, and their lawyers, Thurmond & Crockett, moved to dissolve said injunction, because there is no equity in plaintiff's petition, and adopted the motion of defendants Barker and Baughn to dissolve, based on the pendency of a suit in the county court of Palo Pinto county, appealable to the Court of Civil Appeals. Defendants Woodard and Garrett filed amended motion to dissolve, because the court has no jurisdiction to try the case because of the amount involved, and because the court has no authority to enjoin

the justice of the peace courts or county courts of the state. On hearing, the suit as to the defendant Baughn was dismissed by appellant, and the court sustained the general demurrer of the defendants Garrett, Woodard, Crockett, and Thurmond, and dismissed those defendants from the case, and then adjudged that, as the amount in controversy between the other defendants and appellant was only $240, the court had no jurisdiction as to them, and dismissed the injunction as to them. Appellant promptly excepted, gave notice of appeal, and has perfected appeal to this court."

Appellant first insists that his petition is maintainable on the ground of preventing a multiplicity of suits to which his petition shows a perfect defense, and as against which there is no adequate protection except by injunction. It is not to be doubted that in this state in a proper case the district court may issue an injunction to prevent a multiplicity of suits. See Ry. v. Dowe, 70 Tex. 5, 6, 7 S. W. 368; Realty Co. v. Haller, 128 Mo. App. 66, 106 S. W. 589; Piano Mfg. Co. v. MacMaster, 113 S. W. 337. These are all cases, however, in which the multiplied suits sought to be enjoined had been instituted or were threatened by persons claiming in a single right separate causes of action arising from the same source. Not so here, however. The petition fails to show any community of right in appellees. It is said in a note, supported by numerous authorities, on page 767 of 22 Cyc., that: "The mere fact that numerous independent parties hold separate instruments upon which there might be separate suits is not sufficient to justify the court of equity in entertaining an action by the debtor to compel them to litigate their claims in an action in the forum he selects. And this even though the validity of all those instruments is attacked upon a common ground." This principle it seems to us is applicable here. Moreover, the contract made by appellant with Garrett, and which is attached, as an exhibit to the petition, undoubtedly authorized Garrett to sell lots in the addition to which the contract relates. By the terms of this contract it is specifically provided that, "whenever the purchase price of a lot as per schedule attached has been paid, then said Hamner is to make a general warranty deed to the purchaser thereof." The only persons named in the petition who have or are threatening to institute suits under this branch of appellant's case are the appellees McCoun, Keith, and Sandusky. The petition shows that these parties claim to have purchased and fully paid for the lots claimed by them and these averments are not specifically denied. Neither of these appellees is interested in the controversy of the other, and the suit of either, if well founded, may be easily met by the execution of deeds to them as appellant obligated himself to do. Nor do the claims of all aggregate an amount within the jurisdiction of the district court. The only persons actually named who have instituted suits, or are threatening to institute suits, because of misrepresentations made in sales of certificates under the Oklahoma plan, were the defendants Barker and Baughn, as to whom appellant dismissed his suit. Manifestly no injunction could issue as sought against unknown persons not made parties to the suit. Watkins Land Co. v. Clements, 98 Tex. 578, 86 S. W. 733, 70 L. R. A. 964, 107 Am. St. Rep. 653. It is likewise manifest, we think, that the causes of action asserted by these several classes of purchasers are wholly dissimilar in character and dependent upon different state of facts, one class arising ex contractu, the other ex delicto, which generally cannot be joined. See Frey v. F. W. & Rio Grande Ry. Co., 86 Tex. 465, 25 S. W. 609; U. S. Fidelity & Guaranty Co. v. Fossati, 97 Tex. 497, 80 S. W. 74, and authorities therein cited.

As to the appellees Garrett and J. W. and J. H. Woodard, the petition, aside from mere legal conclusions, is altogether too indefinite to show a cause of action. The petition fails to show that either of these appellees are asserting any rights by virtue of the contracts made by them, and it appears from the petition, though not perhaps from the statement quoted, that early in May, 1907, appellant was informed of the published representation that he was a partner with said appellees, but that during the same month appellant repudiated the relation, and the petition fails to aver that, after such repudiation, appellees or any one of them continued to represent him as a partner, or, if so, no person other than those as to whom the suit was dismissed is named who was misled by the misrepresentation. It is averred that thereafter appellees represented that the associate of appellee and the Woodards was a corporation and that appellant was its president, but this certainly cannot be actionable; it not appearing that any one was or could be misled thereby or that any ascertainable sum in the way of damages is stated so as to afford any intelligent basis for relief. Appellant insists that his petition shows a right to the remedy of injunction upon the equitable doctrine of discovery. But, in so far as it was necessary on appellant's part to this relief, an exercise of his legal right to examine opposing parties as witnesses given by Rev. St. 1895, art. 2293, would have given him all the information as to the names, amounts, etc., relating to the sales of lots or certificates by the defendants Garrett or either of the Woodards that could be obtained under the equitable rules relating to discovery. Because of this statute, the doctrine of discovery, after full discussion of the authorities, is declared to have no application under our system of procedure. Love v. Keowne et al., 58 Tex. 191; Gouhenant v. Anderson, 20 Tex. 460; Cargill v. Dennis & Kountze, 86 Tex. 400, 22 S. W.

1015, 25 S. W. 13, 24 L. R. A. 183, 40 Am. St. Rep. 853.

The fundamental proposition that the judgment was rendered at a term of court held at a time unauthorized by law seems to be fully answered by the construction of Act Feb. 3, 1909 (Gen. Laws 1909, p. 10), given in the cases of Bowden v. Crawford (Sup.) 125 S. W. 5; Freeman v. Taylor, 125 S. W. 613, and Nobles v. State, 57 Tex. Cr. R. 307, 123 S. W. 126.

We conclude that no error was committed in sustaining the general demurrer to appellant's petition and dissolving the injunction.

The judgment.is accordingly affirmed.