KANSAS CITY BREWERIES COMPANY, a Corporation, Respondent, v. LOUIS I. MARKOWITZ, Appellant.

Kansas City Court of Appeals, February 16, 1920.

1. **APPELLATE PRACTICE: Motion to Dismiss Appeal.** Where the points relied on and the errors complained of are separately assigned in distinct subheads and paragraphs the appeal will not be dismissed although there is no formal collective assignment of errors in any given part of the brief.

2. **INJUNCTION: Restraining Prosecution of Actions: Multiplicity of suits.** Upon a showing that numerous suits are threatened or intended, all depending on the same legal question and involving the same facts and circumstances, the prosecution of such further suits may be enjoined to prevent a multiplicity of suits.

3. **————: Restraining Prosecution of Suits Pending on Appeal.** A decree which, in addition to enjoining the bringing of new actions involving the same facts and circumstances, restrains the prosecution of an appeal taken by the defendant from a judgment in a law suit in which he was plaintiff, is erroneous in so far as the further prosecution of the law action pending on appeal is prohibited, as the effect of such a decree is to deprive the defendant of his right to carry on an appeal from the law judgment and to

deprive him of his right to have a jury pass upon the issues of fact in a case where the issues were purely questions of fact and the defense was legal, not equitable; multiplicity of suits is prevented by the injunction against further actions other than the one pending.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney,* Judge.

REVERSED AND REMANDED.

*James E. Goodrich* and *Raymond G. Barnett* for respondent.

*Frank M. Lowe* for appellant.

TRIMBLE, J.—Defendant Markowitz owned a storeroom in Kansas City which he leased to the Kansas City Breweries Company for a term of three years beginning February 1, 1912, and ending February 1, 1915 (with privilege of two years more), at a rental of $50 per month. The lessee was given the privilege of subletting all or any part of said premises to such sub-tenant as it might select, but such subletting should not release the lessee from the obligation to pay rent as above provided. For a time the premises were used for saloon purposes, but as the saloon did not pay, it was closed and the building was unoccupied for some time.

Finally, the lessee, Breweries Company subrented the property to Levy & Kort for a fish market, they paying to the Breweries Company $10 per month rent and the Company paying to the lessor, Markowitz, $50 per month as required by their lease. Levy soon dissolved partnership with Kort and got out, leaving

Kort to continue as the Breweries Company's sub-tenant. At the time the storeroom was sub-rented to Levy & Kort, the Breweries Company told them they could stay there till February 1, 1915, as the Company's lease thereon expired on that date.

On January 10, 1915, the Breweries Company brought suit against Kort for the rent up to February 1, 1915, at the rate of $10 per month. Kort went into the justice court and paid a full month's rent beside the costs. The excess of this payment, or the rent beyond February 1, the Breweries Company declined to receive and sent it back to him.

On January 22, 1915, the Breweries Company notified Markowitz that it did not care to exercise its privilege of renewing the lease and that it would expire on February 1, 1915; and on that same day, to-wit, January 22, 1915, the Breweries Company notified Kort that the lease would expire on February 1, 1915. Thereafter, according to plaintiff's evidence, in a conversation had by the Breweries Company with Markowitz, wherein they stated they intended to vacate the premises on February 1, and wanted to know of him if Kort was satisfactory, Markowitz said he would see Kort and make arrangements before February 1. Marknowitz denied this. On January 28, 1915, the Breweries Company wrote another letter to Markowitz calling attention to the fact that the lease expired February 1, and that Kort was in possession of the premises, and saying that if he continued to hold over after the first of February, they stood ready to bring suit to dispossess him provided Markowitz would permit the Company to bring the suit in his name, the Company to pay all expenses. On the same date, January 28, the Company also wrote Kort that their lease expired on February 1, and his tenancy expired on the same date and he must vacate not later than that date unless he made arrangements with Markowitz to occupy the premises with his consent and as his tenant.

Kort did not get out but on February 6th sent the Company $10 for a month's rent. This the Company returned to him. On February 9, 1915, Markowitz, through his attorney, notified the Breweries Company that he demanded the rent for the month of February and that such demand would be renewed for such other periods of months as they retained possession of the premises. Again on March 17, 1915, Markowitz, through his attorney, wrote the Breweries Company that they were bound under their lease to pay the rent until they put Markowitz in possession, and that until they did so he would look to the Company for the payment of the rent.

On April 7, 1915, Markowitz brought suit in a justice court against the Breweries Company for the rent of February, March and April, 1915, at $50 per month. Judgment was therein rendered against the Breweries Company for $25 and Markowitz appealed to the circuit court *and said appeal was pending in said court when the suit in the case at bar was filed and heard.*

On July 5, 1915, Markowitz brought another suit in the justice court against the Breweries Company for the rent of May, June and July, at the same rates, to-wit, $50 per month. A change of venue was taken and the case was set down for trial on July 22, 1915.

On this last named date, however, the Breweries Company brought the present suit, the same being an action in equity to perpetually enjoin the defendant, Markowitz "from bringing or *prosecuting any* suit or action against plaintiff" on account of any rent arising out of the facts and circumstances, and further praying the court to decree "that since the 1st day of February, 1915, said Kort has occupied said premises as the tenant of said Markowitz, and that the tenancy of the plaintiff terminated and ceased to exist upon said February 1, 1915," and also praying that in the meantime a temporary restraining order issue against the defendant restraining him from bringing or prosecuting

any suit or action against the plaintiff on account of any rent or charge arising out of the circumstances. Originally the injunction suit was against Markowitz and Kort. A temporary restraining order was issued against both defendants on July 22, 1915, and later, on July 28, 1915, a temporary injunction was issued restraining them "from bringing or *prosecuting any* or charge of any kind arising out of the use or occu- suit or action against plaintiff on account of any rent pation of the store room" etc.

The cause came on for trial on December 10, 1915, when plaintiff dismissed as to Kort. The defendant's objections to the equity case and its maintenance were all overruled and the trial entered into.

The bill for equitable relief alleged the owner- ship of the property by Markowitz and the leasing thereof to the plaintiff; that plaintiff sublet the prem- ises to Kort; that before February 1, 1915, the date the lease was to terminate, plaintiff notified Kort that the lease would expire on that date, but that although he well knew he could occupy said premises no longer than said date as a sub-tenant of plaintiff, he failed and neglected to move from said premises; that since the 1st day of February, 1915, Kort has occupied the premises as the tenant of Markowitz and has paid rent to said Markowitz; that Markowitz claims that Kort still occupies the premises as plaintiff's subtenant "and has brought and threatens to bring from time to time numerous actions and suits in the courts to compel plain- tiff to continue to pay rent upon said premises to said Markowitz; that all of these suits and actions which defendant Markowitz has brought and threatens to bring depend upon the same legal questions and in- volve similar issues of fact."

The bill further alleged that at the time the lease was first made the property was much more valuable for rental purposes than it is now and much more valuable than it was for some time prior to February 1, 1915; that although plaintiff paid $50 per month

rent under the lease, plaintiff had, on account of such decrease in rental value, subrented said property to Kort at $10 per month; that Markowitz and Kort had entered into a conspiracy or understanding with the wrongful intent of compelling plaintiff by various suits to continue to pay $50 per month for said property; and that in furtherance of this unlawful purpose Markowitz and Kort have each claimed or pretended that Kort is occupying the premises as the tenant of plaintiff whereas, as a matter of fact, Raid Kort his since February 1, 1915, occupied said premises as the tenant of Markowitz and has paid to Markowitz a sum of money each month as rental for said premises.

The answer of defendant was a general denial.

After a trial, the chancellor rendered a decree finding, among other things, that Markowitz and Kort entered into a conspiracy and secret agreement by virtue of which Kort retained possession of the premises ostensibly claiming still to be the sub-tenant of plaintiff, whereas, in truth and in fact Kort did, by virtue of said agreement, become the tenant of defendant Markowitz from and after February 1, 1915; that Markowitz instituted sundry proceedings at law in the justice court of Jackson county, Missouri, to recover rent from the plaintiff, by reason of the occupancy of said premises by Kort after the expiration of said lease, whereas, in truth and in fact, as the court finds, there was and is no rent whatever due from the plaintiff to the defendant and has not been since said February 1, 1915, and that plaintiff has not been, since said February 1, 1915, a tenant of said Markowitz.

The Chancellor further found that Markowitz threatens to bring numerous suits at law to compel plaintiff to continue to pay rents upon said premises to said defendant; and "that all of such threatened suits at law will depend upon the same state of facts and the same questions of law as the said suits heretofore brought by the said Markowitz against the said plaintiff."

The Chancellor thereupon adjudged and decreed that Markowitz be perpetually restrained and enjoined from conspiring and agreeing with said Kort to defraud plaintiff out of any money on account of rents due on account of any supposed tenancy of the plaintiff in said premises.

The decree further adjudged that Markowitz be "perpetually restrained and enjoined from continuing or prosecuting all the said suits at law now pending in the justice courts and circuit courts of Jackson County, Missouri."

The decree further provided that Markowitz be "perpetually restrained and enjoined from instituting any suit at law or otherwise, against the plaintiff. The Kansas City Breweries Company, for or upon any claim or demand in any manner growing out of any alleged tenancy (since February 1, 1915), of the Kansas City Breweries Company in and to the premises hereinbefore described."

From the decree thus rendered the defendant appealed to the Supreme Court of Missouri the appeal to that court being taken on the ground that a constitutional question was involved. That court held that such question was raised at the trial, but that as it was not presented, briefed or urged on appeal, the same was not involved in the sense that it put jurisdiction in that court; and, as the case was not otherwise within its jurisdiction, the same was ordered transferred to our court.

Respondent filed in the Supreme Court a motion to dismiss the appeal on the ground that appellant's brief did not comply with the rules of appellate procedure. Appellant filed a reply brief in that court answering the motion to dismiss and also replying to the respondent's brief. The Supreme Court did not act on the motion and it comes now to us along with the case. We cannot accept the view that the failure of the Supreme Court to sustain the motion is an *implied* holding that ap-

pellant's brief is sufficient. The Supreme Court, observing that it had no jurisdiction of the appeal, did nothing except to transfer the case to us. Action either way on the motion to dismiss would have been an exercise of the very jurisdiction the Supreme Court was explicitly denying it had.

We think, however, that appellant's brief is not so vulnerable as to be open to an attack by motion to dismiss. The cases cited by respondent are those wherein the brief of appellant failed to specify or point out the errors of the trial court. For example, Newell v. Barks, 197 S. W. 344. In Vahldick v. Vahldick, 264 Mo. 529, 532, there was neither an assignment of errors nor of points and authorities. The court said, however, that "where appellant, though making no formal collective assignment of errors in any given part of his brief, yet separately assigns error specifically in distinct subheads of his points and authorities, we will accept this as a substantial compliance with the statute and our rules. [Perry v. Strawbridge, 109 Mo. 621; Mugan v. Wheeler, 241 Mo. 376; Collier v. Lead Co., 208 Mo. 246.]" Appellant's brief comes, we think, clearly within the principle of the above rule. The points relied upon and the errors complained of are separately assigned in distinct subheads and paragraphs so that we can see just what it is appellant complains of. The motion to dismiss appeal is, therefore, overruled.

A few general observations may be made preliminary to a discussion of the merits. A controversy existed between plaintiff and defendant over whether Kort, who was a sub-tenant of plaintiff, became, after February 1, 1915, a tenant of Markowitz or whether he merely held over after that date whereby his possession was that of the plaintiff's, it having put him in possession and being bound to get him out under their agreement to render peaceable possession. If the latter was the situation, then Kort's possession was that of the plaintiff and it would be liable for the rent so long

as he remained in possession and was not accepted or recognized by the landlord as his tenant. [Bliss v. Jenkins, 129 Mo. 647, 660, 661; Wells v. Warnick, 198 S. W. 1121; Julian v. Kansas City Granite, etc., Co., 187 S. W. 584.] The landlord, Markowitz, brought one suit in a justice court for the rent at the leasehold rates for the three months, February, March and April. He got judgment, but only for a small amount and appealed to the circuit court. Later on, he brought another suit for another three months rent, but on the day it was set for trial, plaintiff brought the present equity suit and perpetually enjoined him, not only from bringing any more suits, but also from *further prosecuting the suits at law* which *was then pending on appeal in the circuit court.* The controversy between them as to the rent is over a question of *fact,* namely, whether Kort was or had become Markowitz's tenant. The defense of the Breweries Company could be raised and fully presented in a suit at law even though the suit did originate in a justice court. In other words, the controversy over the rent between plaintiff and defendant was not one wherein the Breweries Company had an *equitable* defense which *could not be interposed* in the suits Markowitz had brought, or might bring thereafter. Again, there was no evidence that any suits other than the two already brought would be instituted unless this might be inferred from the bringing of those two and from the statement in the letter of Markowitz's attorney that he expected to hold the Company for the rent of such months as it retained possession of the premises. But, aside from any question whether the fact that two suits had already been brought together with the *possibility* of others being instituted, would constitute such a *multiplicity* of suits as would authorize the interposition of a court of equity on that ground, and conceding, but without deciding, that it would, still the question is, are the circumstances such as to justify the decree that was rendered herein?

It will be observed that the decree not only perpetually enjoins Markowitz from prosecuting the *second* suit he instituted and from instituting any others, but it prevents him from *further prosecuting his appeal in the first case he brought*. Now there are many cases holding that "the preventio nof a multiplicity of suits is one of the heads of equity jurisdiction, and when the circumstances are appropriate, chancery will entertain a cause simply to prevent the annoyance and expense of repeated legal actions." [Aimee Realty Co. v. Haller, 128 Mo. App. 66, 1. c. 74.] Nor is it necessary in this State for a complainant to first establish the merits of his contention in at least one instance by a court of law before he is entitled to restrain the prosecution of "*successive* legal actions" on the ground of avoiding a multiplicity of suits. [Aimee Realty Co. v. Haller, supra, 1. c. 76] In other words, a complainant, threatened with a multiplicity of suits over the same matter, may bring a suit in equity to obtain relief from such multiplicity, *before* any suit at law has been brought against him. [Sylvester Coal Company v. City of St. Louis, 130 Mo. 323.] And even where a suit at law has *already* been brought and others are threatened, he may, in a court of equity enjoin not only the institution and prosecution of *further* suits but possibly may stop proceedings *in the one already brought;* but it will be observed that where this is done, the matter is in one of two situations: *first,* either the complainant's defense to the action at law is equitable and cannot be made available in such action, or the disputed issue between them, on which the various suits depend, is one of law as distinguished from one of fact. For instance, where the whole controversy between the parties will be settled by an adjudication of the question as to the *validity of an ordinance.* Of course this is a question of law, and a determination of that question at once settles the controversy and that too without violating any of the parties' rights on account of the change from a legal to an equitable forum. The cases of Sylvester Coal Co.

v. City of St. Louis, supra; Jewell Tea Co. v. City of Carthage, 257 Mo. 383; Davis v. Fasig, 128 Tenn. 271; Mayor, etc., of Baltimore v. Radecke, 49 Md. 217, were all cases of injunction brought before any suit at law was instituted as also was the case of Aimee Realty Co. v. Haller supra. If there are any cases holding that a *pending* appeal, involving purely legal issues, can be enjoined and proceedings stopped therein along with the enjoining of other or successive suits, then it will be found that the stopping of the suit at law first brought was done because the question involved in it as well as in the successive suits was merely a question of law, as distinguished from one of fact, and hence the determination of that question could be had in the equity court as well as in the law court where the legal action first brought was pending. In all other cases, it is only the institution and prosecution of *further* suits that is enjoined. So far as the author has been able to find, it has never been held that where a suit at law, involving merely a dispute of *fact*, has been brought and judgment obtained thereon and an appeal has been taken and is pending, the defendant therein can go into a court of equity *and stop the further prosecution of that case*. He may obtain an injunction to prevent the institution and prosecution of *further* suits, but nowhere, so far as we have been able to find, has a court of equity ever taken away from a court of law the adjudication of a question of fact in a purely law case then pending therein, and then proceed to adjudicate that fact to the exclusion of the law court. An examination of many cases will disclose that the original pending law case is not disturbed. It is only the *other* cases that are restrained until the decision has been had in the law court. [See 1 Joyce on Injunctions, sec. 537.] In 1 Pomeroy's Equity Jurisp. 6 Ed.), sec. 254, p. 430, the author, in speaking of the right to injunction where one defendant has brought a number of actions against the plaintiff depending upon similar facts and circumstances and the same legal questions,

says: "It should be carefully observed that a court of equity does not interfere in this class of cases to restrain absolutely and completely any and all trials and decisions of the questions presented by the pending actions at law; it only intervenes to prevent the *repeated* or *numerous* trials." Italics ours). In the case of Simpson v. McGuirk, 194 S. W. 979, the court on page 981, carefully points out that the injunction therein upheld did not restrain the defendants from prosecuting to a final judgment the suit pending in the justice court, and noted the distinction between that case and one where a complainant seeks by injunction to stay the prosecution of a then pending suit wherein he had an adequate defense at law.

In Galveston, etc., R. Co. v. Dowe, 70 Texas, 5, the objections to the injunction, in so far as it sought to enjoin the enforcement of the first suit in the county court were sustained, but the injunction was upheld as to the other suits.

In City of Rushville National Gas Co., 132 Ind. 575, it was not the first prosecution that was enjoined but only the *threatened further* prosecutions, and that too in a case where the adjudication of a pure question of law was involved, namely, the invalidity of an ordinance. In the case of Third Ave. R. Co. v. Mayor, etc., of New ork, 54 N. Y. 159, the injunction was not "to restrain defendants from *obtaining a decision* by the justice's court of the question involved in the actions pending therein; but the continuance of the prosecution of one of them is suffered and permitted." (Italics the court's.) So also in the case of Norfolk, etc., Co. v. Arnold, 143 N. Y. 265, the injunction did not restrain or interfere with the suit then pending on appeal but only restrained the defendant from proceeding with the other suits brought and from instituting others until the appeal should be determined.

In the case of Featherstone v. Carr, 132 N. C. 800, the injunction was not to stay proceedings in the case

pending on appeal. That was not interfered with but the prosecution of "any further suits" was enjoined.

It seems to us that the Chancellor went too far in restraining the defendant from prosecuting the case that was then pending on appeal in the circuit court. The *multiplicity* of suits would be prevented by merely restraining all *other* and *further* suits until a determination could be had in the one then pending, and this could be done upon a showing that numerous suits were threatened or intended, all depending on the same legal question and involving the same facts and circumstances. Such course would not require the equity court to take out of the law court's hands the adjudication of a mere question of fact in a purely law case, and decide that question itself to the exclusion of the law court already lawfully possessed of the case. Indeed, in order to prevent the cost of a *multiplicity* of suits, the equity court would not have to adjudge the disputed *fact* either way. All it would have to do would be to ascertain that a number of suits were threatened or were going to be brought, that they all involved the same circumstances and legal matters and that there was reasonable grounds for a dispute thereover. In such case all other or further suits could be stayed until the disputed issue of fact was finally adjudicated in the pending law action originally brought. But for the equity court to say that it will not only stay all further suits but will stop the further prosecution of the one already pending on appeal, is to *destroy defendant's appeal* in the original law case, to take away from him the right to have the disputed issue of fact submitted to a jury in the law court and compel him to submit the final adjudication of that question of fact to the decision of a chancellor without a jury; and this too notwithstanding the fact that complainant's defense in the law case pending on appeal can be fully and adequately presented a tlaw in that suit. As stated above, we know of no case holding that, under these circumstances, a court of equity will go to the lengths thus

indicated, and in our opinion the decree, in thus restraining the prosecution of the pending appeal, ought not to be approved.

So far as the evidence before the chancellor is concerned there is no evidence of a conspiracy between Kort and Markowitz. They each deny that the former ever paid any money to the latter. Kort's evidence is that he paid the rent twice to the Breweries Company for the use of the premises after February 1, 1915, but as it was sent back to him he never paid any more to anyone. Markowitz says he has got nothing out of the building since February 1, 1915. The Breweries Company never put the owner in possession and nowhere claims that it did. There is no evidence that Kort ever paid any rent to Markowitz except the evidence of certain statements Kort is alleged to have made in conversation with others outside the presence and hearing of Markowitz. Kort, however, went upon the stand and denied making them. The evidence of these alleged statements was objected to as being inadmissible against Markowitz. Unless a conspiracy between the two was shown, no statements made by Kort outside of the presence and hearing of Markowitz would bind him or be admissible against him. However, we are unwilling to say there is no evidence justifying any injunction in the case. As intimated above there is enough evidence to show a real controversy between the parties as to whether Kort became the tenant of Markowitz after February 1, 1915, so as to relieve the Breweries Company of the charge of not having given possession by putting him out. In order to prevent a multiplicity of suits it is not necessary for the court to fully and finally adjudicate that question of fact, since, in order to restrain the prosecution of further suits, it has only to find that numerous suits involving the same questions and circumstances are threatened and that a real controversy exists which the pending case will determine. In such state of affairs the court could restrain the institution or the prosecution of all

other suits until the one that was originally brought and is now pending on appeal in the circuit court can be determined.

The judgment is, therefore, reversed and the cause remanded. The other judges concur.