WILSON, REHEIS, ROLFES LUMBER COMPANY, Respondent, v. W. M. WARE et al., Defendants; STAR REALTY COMPANY et al., Appellants.

St. Louis Court of Appeals, June 28, 1910.

1. EVIDENCE: Abbreviations: Mechanics' Liens. In an action to enforce a mechanic's lien, an objection to the admission in evidence of dray tickets describing material, on the score they contained unintelligible abbreviations, was without merit, inasmuch as many of the tickets contained perfectly plain descriptions of the material and the abbreviations in others were explained by expert testimony.

2. MECHANICS' LIENS: Necessity of Identifying Material. In an action to enforce a merchanic's lien, the identity of the material which went into the improvement must be shown, for a lien to lie.

3. ————: ————: Sufficiency of Evidence. In an action to enforce a mechanic's lien against two houses, the material to build which was purchased at the same time that material to build two other houses was purchased, evidence *held* sufficient to show that the material mentioned in the lien account went into the buildings against which it was sought to enforce the lien and to properly identify such material.

4. ————: Splitting Action. Where material for four buildings is purchased and furnished together, the account may be split, and a lien enforced against two of the buildings, if the material which went into those buildings can be identified.

5. EVIDENCE: Memorandum to Refresh Memory: Mechanics' Liens. In an action to enforce a merchanic's lien, the one who purchased the material may use in testifying, to refresh his

memory as to the material furnished by plaintiff, a memorandum of the lumber used in the construction of the buildings which he made on inspecting the buildings, he having testified that he knew at sight every bit of material furnished by plaintiff and had ascertained the dimensions by actual measurement.

6. **MECHANICS' LIENS: Payment: Construction of Order for Payment.** A contractor entered into a contract for the erection of two houses, and the owner, as part of the consideration, agreed to convey some adjacent land to the contractor. The latter commenced the erection of the two houses on the owner's land and also two houses on the land to be conveyed to him, but the owner refused to convey the land until the contractor had paid all bills for material used in the buildings located on the owner's land, in order to protect them from mechanics' liens. The contractor negotiated a loan on the land to be conveyed to him, and gave the materialman an order directing the lender to pay the materialman a certain sum "on my building." The order was paid, and the payment thus made liquidated in full the materialman's bill for material furnished for all four buildings up to that date. Subsequently, the materialman furnished other material for the two buildings located on the contractor's land, which was not paid for. In an action to enforce a mechanic's lien against said buildings, *held* that the order given by the contractor was not a direction to apply the sum therein named in payment of the material furnished and to be thereafter furnished for the contractor's houses, but instead was a direction to apply it generally for lumber furnished for the four buildings.

7. ———: ———: ———: **Estoppel.** A contractor entered into a contract for the erection of two houses, and the owner as part of the consideration, agreed to convey some adjacent land to the contractor. The latter commenced the erection of the two houses on the owner's land and also two houses on the land to be conveyed to him, but the owner refused to convey the land until the contractor had paid all bills for material used in the buildings located on the owner's land, in order to protect them from mechanics' liens. The contractor negotiated a loan on the land to be conveyed to him, and gave the materialman an order directing the lender to pay the materialman a certain sum "on my building." The order was paid, and the payment thus made liquidated in full the materialman's bill for material furnished for all four buildings up to that date. Subsequently, the materialman furnished other material for the two buildings located on the contractor's land, which was not paid for. In an action to enforce a mechanic's lien against said buildings, the lender testified that he knew the contractor was erecting four houses and that he refused to pay the order drawn by the contractor in favor of the materialman until he saw the condi-

Lumber Co. v. Realty Co.

tion of the houses, but he did not testify he believed the payment was meant to cover only material to be furnished for the two houses owned by the contractor. *Held*, that the materialman was not estopped, as against the lender, to enforce a mechanic's lien against the two buildings owned by the contractor for the material furnished subsequent to the loan and the payment.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

AFFIRMED.

*H. E. Sprague* and *Franklin Miller* for appellants.

(1) The judgment should be reversed for lack of evidence to support the verdict. The total amount of lumber and materials shown, by the fourteen dray tickets in evidence, to have been delivered to the four houses is $471.56, while the total amount claimed to have been so delivered, and on which the lien account is based, is $926.45. The difference of $454.89 is unsupported by any evidence. (2) The lien account was improperly admitted in evidence. It shows on its face no credit for the payment made on the account, on May 4, 1907, within the period which it covered, April 20th to July 3, 1907. Without the lien account in evidence, plaintiff was not entitled to recover. Poppert v. Wright, 52 Mo. App. 576; Uthoff v. Gerhart, 42 Mo. App. 256. (3) Witness Ware was improperly permitted to testify from his memoranda or "time book," as to the lumber that went into the two houses; such memoranda not being made at or near the time of the event, or in the ordinary course of business. 1 Greenleaf's Ev., sec. 438; Maxwell v. Wilkinson, 113 U. S. 656; Chaffee v. United States, 16 Wall. 516; Halsey v. Sensebaugh, 15 N. Y. 485; Russell v. Railroad, 17 N. Y. 134. (4) Plaintiff's instruction No. 2 was erroneous in that: (a) it improperly submitted to the jury an issue outside the pleadings, namely: plaintiff's account with reference to

"said four houses;" and (b) it was unsupported by evidence as to the four houses (see first point above), and was supported only by incompetent evidence as to the two houses. Chouquette v. Barada, 28 Mo. 491; Hickman v. Link, 116 Mo. 123; Railroad v. Stockyards, 120 Mo. 541. (5) . Defendant's payment of $837.81 was specifically directed by the order on which it was paid, to be applied to Ware's account for his two houses, and plaintiff was bound to apply said payment as directed, and not to the account for the four houses; such sum paying for the two houses in full, the peremptory instruction should have been given. If, however, the giving of such direction was in controversy, the issue was one for the jury and defendant's instruction No. 4 should have been given. Longworth v. Aslin, 106 Mo. 155; Brown v. Brown, 124 Mo. 79. (6) By furnishing lumber which was to be, and was, used indiscriminately, to the four houses owned by two different persons, plaintiff failed to preserve its lien against the two houses in suit. This fact not being controverted, the peremptory instruction should have been given; while if there was an issue for the jury therein, defendant's instruction No. 5 should have been given. Schulenburg v. Robinson, 5 Mo. App. 561; Reitz v. Ghio, 47 Mo. App. 287. (7) The materials in the plaintiff's account for these four houses were not such that the account could be properly split between the two sets of houses; the law permits a mechanic's lien account to be split only where the materials, after they are installed in the building can be picked out and identified, or where from their character they must be computed by measurement. Hayden v. Logan, 9 Mo. App. 492; McLaughlin v. Schawacker, 31 Mo. App. 365; Christopher, etc., Co. v. Kelly, 91 Mo. App. 93; Lumber Co. v. Mill Co., 59 Mo. App. 661; Schulenburg v. Vrooman, 7 Mo. App. 133. (8) Even were this account susceptible of being split, the method of doing so employed by plaintiff was improper; without first taking into consideration

the amount of lumber delivered to and used in the construction of the four houses, prior to April 20, 1907, and without any proof of the relative stage of completion of the four houses respectively on that date, it was impossible to determine the amount of such lumber delivered after April 20, 1907 (the account sought to be split), which was actually used in the two houses in suit; and for that reason the peremptory instruction should have been given. Schulenburg v. Vrooman, supra.

*Rudolph Schulenburg* for respondent.

GOODE, J.—Action to enforce a lien for material furnished for two one-story frame dwelling houses Nos. 5551 and 5553 Maffit avenue in St. Louis on lots 3 and 4 of city block 5254. Just west of those two houses two others, Nos. 5555 and 5559, were erected at the same time by defendant W. N. Ware, on lots 5 and 6 of said city block. In March, 1907, John Powers owned the four lots. He contracted with Ware to build two frame houses for him on lots 5 and 6 for $2400, or $1200 each, agreeing to pay $800 of the cost by conveying to Ware lots 3 and 4. Under this arrangement Ware set about the erection of the houses, two for himself and two for Powers, all nearly alike. Ware began construction work the last of March and bought lumber and materials he needed for the houses from plaintiff. Powers had not yet executed a deed to Ware for lots 3 and 4, and did not until April 25, 1907, and then instead of conveying directly to Ware, by direction of the latter conveyed the two lots by separate deeds to John Sullivan, who took them in trust for Ware and held no personal interest in them. April 29, 1907, Sullivan executed a deed of trust to R. F. Kilgen, as trustee for P. F. Jolly, on lot 4, to secure a note for $1000, due three years after date, and six interest notes for $30 each, and on the same date executed a deed of trust to R. F. Kilgen, as trustee for Jolly, on lot 3, to secure similar notes. On May 15,

150 App.—5

1905, Sullivan executed a warranty deed conveying both lots to the Star Realty Company, the present owner. By reason of the several conveyances recited, not only Ware, but Sullivan, Kilgen, Jolly, the McCormick-Kilgen-Rule Real Estate Company and the Star Realty Company are defendants, the McCormick-Kilgen-Rule Company being the real owner of the notes secured by the two deeds of trust. From March 30th, when he began to buy, to April 20th, Ware bought from plaintiff lumber and other material for use in the houses to the amount of $837.81. Before Powers would convey the two east lots pursuant to his agreement with Ware, he required this debt to be paid so the plaintiff would hold no lienable demand against the two lots and houses retained by Powers. To make the payment and go on with the construction of the houses, Ware, acting through Sullivan, borrowed the two loans of $1000 each and secured them by the deeds of trust as we have stated, and directed the McCormick-Kilgen-Rule Company to pay the account of plaintiff for material out of the borrowed money, and to that end gave said company said order, and when plaintiff was paid in compliance with the order, plaintiff signed the receipt at the foot. The payment to plaintiff was made by check drawn by McCormick-Kilgen-Rule Real Estate Company for $837.81 on the International Bank of St. Louis, May 3d, or a week after the order to pay had been given by Ware, the payment covering, as stated, Ware's purchases from plaintiff to April 20th. Subsequent to that payment Ware purchased other lumber and material from plaintiff for use in the houses to the amount of $926.45, for which he failed to pay, and the lien involved in the present action was filed for $386.17, or for the reasonable value of that portion of the subsequent purchases which was used in the construction of the houses built on lots three and four, conveyed by Powers to Sullivan as trustee for Ware. Plaintiff was given verdict and judgment against defendant Ware for said sum, and a lien was

declared on lots three and four and the improvements thereon, whereupon all the defendants, except Ware and Sullivan, appealed to this court.

One contention here is that the lumber and material mentioned in the lien account were not proved to have gone into the two houses on lots three and four; that is to say, the material purchased of plaintiff and used in those houses was not distinguished from the portions used in the houses on lots five and six, retained by Powers. Ware did not make separate contracts with plaintiff for material for each of the four houses, or separate contracts for lumber for the two houses built for himself and the two built for Powers, but made only a general contract for lumber to be used in the four houses on the four lots. The method of proof adopted to show what materials were sold and delivered by plaintiff for the four houses was this: All materials ordered from time to time were selected from plaintiff's stock at its place of business and loaded for delivery to Ware on Ware's wagons, sometimes on plaintiff's. A triplicate dray ticket was made out for each load, describing the different pieces of lumber in the load, and there were thirty-one of these tickets, each representing a load, of which we will copy one:

"Pieces  Size  Length  Feet Description  Price  Amt.
(Ticket No. 3; date 2-24-'07)

| 66 | 2x4 | 10 | 440 | No. 1 Y. P. | 25 | 11.00 |
| 40 | 2x4 | 14 | 373 | No. 2 Y. P. | 23 | 8.58 |
| 1 Keg. 20d Com. Nails | | | ................ | | | 2.80 |

22.38"

One ticket was retained by plaintiff at its yard and copied into its ledger as a charge against Ware, the other two tickets were turned over to the driver of the load, who, when he delivered the load at the Maffit lots, handed one of the tickets to the person who received the lumber for Ware, the receiver signed the third tick-

et as evidence the load had been delivered, and the receipted ticket was given to plaintiff at its yard. An objection was made to the admission in evidence of the dray tickets on the score they contained unintelligible abbreviations; an objection without merit, for many of the tickets contained perfectly plain descriptions of material, and the abbreviations in others were explained by expert testimony. For instance, in the first line of the one copied, the abbreviations meant 66 pieces of No. 1 yellow pine lumber, ten feet long, two inches thick, four inches wide, and of the total price of $11. Dray tickets from one to thirty-one inclusive, were taken up one by one, and the testimony of different witnesses who either delivered or received the lumber called for by them, was introduced to show the lumber was delivered to Ware or some one for him, at the site of the buildings. The testimony was conclusive that the different purchases were loaded on wagons, hauled to the houses and there turned over to Ware.

It is said the material used in the two houses to be liened was not identified and plaintiff arbitrarily apportioned to those houses parts of the material sold for the four houses subsequent to July 3d, or the interval during which the purchases covered by the lien account occurred. If the testimony established this contention, it would be fatal to plaintiff's case, for the identity of the materials which went into the improvements must be shown for a lien to lie. [Schulenberger v. Vrooman, 7 Mo. App. 113.] Plaintiff followed no such course of proof, but on the contrary Ware himself had noted the different pieces of lumber and other material bought of plaintiff and used in his two buildings; did so in a careful inspection and testified unequivocally regarding each item, thus verifying in every particular the lien account and proving it represented only materials used in his two houses.

But defendant contends an account cannot be split under the circumstances we have here. Suffice to say

as to this proposition, it comes too late, having been rejected in several decisions of this court, beginning with Hayden v. Logan, 9 Mo. App. 492, a case wherein the facts were distinguished from the Schulenberger case, the court declaring that in the latter case the plaintiff assumed, instead of proving, the material for which a lien was asked went into the building to be liened, whereas in the Hayden case, there was substantial evidence tending to prove the fact. And in said case it was further declared that where no injury could accrue to the debtor and there could be no second claim for the same demand, the rule against splitting demands would not be enforced to defeat a lien claim. [Beardslee v. Morgner, 4 Mo. App. 139.] That doctrine has been followed consistently in this court and liens upheld against one of several houses built at the same time, where it was possible to identify the particular materials which went into the one sought to be liened. [Hannon v. Gibson, 14 Mo. App. 33; Christopher, etc., Co. v. Kelly, 91 Mo. 93.]

It is further said that even if plaintiff's account might be split, the method used to prove the items claimed in the lien account was improper. It is argued the evidence does not show the respective stages toward completion of the four houses on April 20, 1907, when plaintiff was paid in full for purchases previously made, and hence it is impossible to determine what lumber went into Ware's houses after that date and what went into Powers' houses. If we grasp the argument, the idea of counsel is this: Perchance all of certain kinds of materials contained in the present lien account, say transoms or hand rails, which the Ware houses required, had been furnished to and placed in them prior to April 20th, so that all those articles furnished by plaintiff subsequent to said date went into Powers' houses. This contention is opposed to the uniform testimony on the question, for Ware testified he made out a list of the different items of material used in his houses and

purchased of plaintiff subsequent to April 20th. To say the least, it was for the jury to determine on this evidence, and there was none to the contrary, whether or not the various items contained in the lien account that were bought after April 20th went into Ware's houses.

When Ware looked through his houses in order to ascertain what lumber furnished by plaintiff after April 20th had gone into them, he made a list in his memorandum or "time book," as he called it, and was permitted by the court to use said list to refresh his memory while on the witness stand. This ruling is assigned for error, it being argued that as the list was not made at or near the date when the material was placed in the houses, it could not be used by the witness to refresh his memory. Ware testified as though he knew at sight every bit of material purchased from plaintiff and ascertained the dimensions by actual measurement. He could not retain the fifty-five or more items in his mind, the number of pieces of each kind of lumber and their dimensions, and without a memorandum would have been unable to testify with certainty. The fact which made the memorandum a proper paper for him to refresh his memory from was, that it was made when he went through the houses to ascertain the material bought of plaintiff and used in them. If he had waited so long after the inspection before listing the items as to render it unlikely he would remember them correctly, the fact might give force to the objection of counsel for defendant. [1 Greenleaf, Evidence (Lewis Ed.), sec. 438.]

It is insisted only fourteen of the dray tickets were introduced, and as there were thirty-one loads of lumber and the same number of dray tickets, the jury were left in the dark as to the contents of seventeen of the loads. Counsel are under a mistake of fact about this matter. The deposition of a witness named Gorg had attached to it fourteen dray tickets and these were offered in connection with his deposition, but the record shows elsewhere counsel for plaintiff introduced other dray

tickets and testimony was given regarding the contents of all of them.

Counsel for defendant say the payment of $837.81 in the settlement of plaintiff's account against Ware on April 20th, was directed by Ware to be applied to pay for material furnished for his (Ware's) houses; wherefore plaintiff had no right to apply it otherwise, and that if applied as directed, it would pay for all the material used in Ware's houses, including what was furnished subsequent to as well as that furnished before the date of payment. In the order Ware gave to the McCormick-Kilgen-Rule Company on April 26th, he directed them to pay plaintiff company $837.81 "on my building." Counsel contend this was an explicit direction to apply the whole sum in payment for the lumber for the buildings owned by Ware individually, instead of applying it generally for lumber furnished for the four buildings. This theory must fail as inconsistent with the rest of the order and the condition of the account against Ware at the time; for the object of the payment was rather to protect Powers from a lien on the houses and lots he would keep, and he had refused to convey the other lots to Ware until he was protected. Ware did not use the word "buildings" but said "my building," meaning, we think, the building work in progress on Maffit avenue. Indeed the order directed the payment to be made according to the contract "for lumber to Maffit avenue." The defendants are interested in the two loans made on the Ware lots a few days after this payment, and if they were misled by plaintiff's order, might have set that up as an estoppel against the present lien, but no estoppel was pleaded; yet the court submitted the defense to the jury. The instruction upon it was that if the jury found plaintiff received payment from the McCormick-Kilgen-Rule Company on Ware's order, and further found plaintiff accepted the payment on said order knowing Ware only owned the houses on Maffit avenue described in the petition, and that the McCormick-Kilgen-Rule Com-

pany had made building loans on said two houses, then said company was entitled to have the payment applied in settlement for lumber furnished for said two houses, and if the jury found the payment, when thus applied, covered the lumber that went into them, the verdict should be for McCormick-Kilgen-Rule Company, and the other defendants except Ware and Sullivan. Kilgen, who attended to the loans, gave testimony which shows he knew Ware was erecting four houses, that he paid the order drawn by Ware in favor of plaintiff and refused to pay it until he went to Maffit avenue and saw the condition of the houses; that they were pretty well along. He did not testify he believed the payment was meant to cover only material to be furnished for the Ware houses. Really there is no estoppel and on examination of the record, we find the case was tried without error; therefore the judgment will be affirmed. All concur.