ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1914.

*(Continued from Volume 187.)*

ST. LOUIS SASH & DOOR WORKS, Respondent, v.
WILLIAM R. TONKINS et al., Appellants.

St. Louis Court of Appeals. Submitted on Briefs January 4,
1915. Opinion Filed February 2, 1915.

1. MECHANICS' LIENS: Use of Material in Building: Sufficiency
   of Evidence. In an action to foreclose a mechanic's lien for
   material furnished to a subcontractor, evidence *held* sufficient
   to warrant a finding that the items for which the lien was
   claimed were furnished for the building, and not as a part of
   a general open account between plaintiff and the subcontractor,
   on the credit of the subcontractor alone.

2. APPELLATE PRACTICE: Conclusiveness of Findings: Me-
   chanics' Liens. Finding of fact, in an action to foreclose a
   mechanic's lien, tried to the court, which are supported by
   substantial evidence, are conclusive, on appeal.

3. PAYMENT: Application of Credit. A creditor may apply
   payments at his discretion, where the debtor gives no specific
   directions to the contrary, and after a payment has been thus
   applied, the debtor has no right to direct how it shall be ap-
   plied.

188 Mo. App.] (1)

4. MECHANICS' LIENS: Payment: Application of Credit. Where a subcontractor made a payment to a materialman, to whom he was indebted on an open account, with money he had received from the principal contractor for erecting the building upon which the materialman sought to enforce a mechanic's lien, without giving the materialman directions as to its application, the materialman was not required to apply it to the items for which he sought a lien, but had the right to apply it to the oldest items of the account, although they were for material that did not go into the building.

5. ————: ————: ————. Where a payment was made by a subcontractor to a materialman, without directions as to its application, and the materialman applied it to the oldest items of an open account, and after the application had been made, and after the materialman had claimed a lien on certain property for material furnished the subcontractor for such property, the subcontractor directed that the payment be applied in payment for the material furnished for that property, *held* that the materialman was not obliged to change the application of the payment.

6. ————: Erroneous Inclusion of Items. In an action to foreclose a mechanic's lien for material furnished for a building, *held* that an item included in the claim for articles furnished for, but not used in, the building, which item was allowed at the trial as a credit, was not fraudulently included in the account, and hence the point made, that the account was not just and true because of the inclusion of this item, was not tenable.

7. ASSIGNMENT FOR BENEFIT OF CREDITORS: Nonstatutory Assignment: Effect. An assignment for the benefit of creditors which is not made under, nor acted upon as being made under, Chap. 8, R. S. 1909, is binding upon the parties to it only so far as they have accepted it.

8. ————: ————: Pleading: Answer Construed. A plea which alleges that defendant assigned all of its property for the benefit of its creditors, and that plaintiff agreed to the assignment and agreed to accept in full payment of its claim a proportionate share of the money received from the sale of the property assigned, does not plead an allowance to creditors under a statutory assignment, having the force of a judgment under Sec. 918, R. S. 1909.

9. MECHANICS' LIENS: Splitting Demands. A general account may be split up for the purpose of obtaining a mechanic's lien on a part of it; so that a materialman could split up an account against a contractor who had made a nonstatutory assignment for the benefit of creditors, and present to the assignee

only the amount outside of items for which it could claim a mechanic's lien, without affecting its right to the lien.

10. ——: **Right to Lien: Evidence.** Evidence that a material-man furnished material for, or that a laborer performed labor on, the building on which a mechanic's lien is claimed, with the intention to claim a lien for material and labor that went into its construction, is sufficient to establish the lien.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman,* Judge.

AFFIRMED.

*Stevens & Stevens* for appellants.

(1) The evidence showing that the materials were sold and delivered and charged to the Kirkwood Manufacturing & Supply Company with no mention that they were sold for the Stockstrom house, the account being an open account, showing debits on one side of over $4000, and credits on the other side of over $3000, and running for nearly two years, establishes beyond a doubt that the materials sued for were sold to the Kirkwood Manufacturing & Supply Company on its sole credit, and the respondent is not entitled to a lien upon the Stockstrom house. Crane v. Neel, 104 Mo. App. 177. (2) The account is not a just and true account and is therefore not lienable. Homnann v. Walton 36 Mo. 613; Uthoff v. Gehhard, 42 Mo. App. 256. (3) A part of the account of the St. Louis Sash & Door Works, against the Kirkwood Manufacturing & Supply Company, having been presented and allowed by the assignees of the Kirkwood Manfacturing & Supply Company, the respondent is bound thereby and cannot obtain another judgment against the Kirkwood Manufacturing & Supply Company. An allowance of a claim before an assignee is a judgment. It is more than a *quasi* judgment *in rem,* as it definitely fixes the status of the claim. LaCrosse

Lumber Co. v. The Audrain County A. & M. Co., 59
Mo. App. 24; Kendrick v. Mfg. Co., 60 Mo. App. 22;
Eppright v. Kauffman, 90 Mo. 25; Roan v. Winn, 93
Mo. 503; Nanson v. Jacob, 93 Mo. 331; Hayden State
Co. v. Cornice & Iron Co., 62 Mo. App. 569; O'Brien
v. Haydock, 59 Mo. App. 653.

*Schulenburg & Diehm* for respondent.

(1)   Under the Mechanic's Lien Statute and the
decisions in this State, the doctrine is established be-
yond doubt, namely, if a materialman furnishes build-
ing material or labor for a building in response to,
at the request of, or under contract with, the owner
or with the contractor or agent of the owner, so to
furnish, although the building is not specifically men-
tioned at the time and although the materialmen did
not then know the location, character or ownership
of it, no further evidence is required that the mat-
erialman has so furnished his material and labor on
the faith of the building and intends to charge it
with a lien, and he is entitled to a mechanic's lien on
taking the statutory steps in securing it.   R. S. 1909,
sec. 4203; Rand v. Grubb, 26 Mo. App. 591; Schulen-
burg & Boeckeler v. Johnson, 38 Mo. App. 404; Crane
v. Neal, 104 Mo. App. 177; Riverside L. Co. v.
Schmidt, 130 Mo. App. 227; May v. Mode, 142 Mo.
App. 656; Darlington L. Co. v. Pottinger, 165 Mo.
App. 442.   Such doctrine is not changed or invalid-
ated, although the materialman keeps a general ac-
count with the contractor respecting his dealings with
him.   Ridge v. Mercantile L. & T. Co., 56 Mo. App.
155.   A general account can, therefore, be split up
for the purpose of obtaining a mechanic's lien on a
part of same, and the general rule against splitting
demands cannot be made to apply to actions on me-
chanic's liens.   Ridge v. Mercantile L. & T. Co., 56
Mo. App. 150; Birdsley v. Morgner, 4 Mo. App. 139;

Hayden v. Logan & Gibson, 9 Mo. App. 490; Kick v. Doerste, 45 Mo. App. 135; Wilson R. & R. L. Co. v. Ware, 150 Mo. App. 61; Aimee Realty Co. v. Haller, 128 Mo. App. 66. (2) The account filed by plaintiff with its mechanic's lien statement is a just and true account under the law and is in compliance with the statutory requirements. Appellants' objection to the sufficiency of the account is based on the contention that a payment made on July 19, 1911, was not credited on plaintiff's lien account and claim, but was credited to its other and older account and claim of $642.51, reducing it to $392.51. In the absence of directions by the debtor how to apply such payment, plaintiff had the absolute right to apply it to its oldest account and claim. Lumber Co. v. Ware, 150 Mo. App. 61; Glass Co. v. Davis Page P. M. Co., 130 Mo. App. 474.

REYNOLDS, P. J.—The plaintiff, respondent here, commenced its action in the circuit court of St. Louis county to recover on an account for material furnished, as it is alleged, to the Kirkwood Manufacturing & Supply Company, a corporation and to have the amount adjudged a lien against the property of one Louis Stockstrom, the lien being claimed against the building and one acre of ground upon which it is situated, being acre property in St. Louis county. The petition avers that one Tonkins entered into a contract with Stockstrom, by which he contracted and agreed to make certain improvements, alterations and repairs for Stockstrom on the building and to furnish the work and labor and all lumber, etc., to be used in its improvement. It is averred that at the special instance and request of defendant Kirkwood Manufacturing & Supply Company, the subcontractor under Tonkins, plaintiff contracted to furnish and perform work and labor and millwork and materials for, upon and to said building, and that the

reasonable value thereof is $417.46. Setting out compliance with the provisions of law necessary to acquire a lien, judgment is asked for $417.46, with interest from May 1, 1911, together with costs of suit and that it be adjudged a lien against the building and one acre of the land upon which it is situated.

Tonkins and Stockstrom answered by general denials.

The answer of defendant Kirkwood Manufacturing & Supply Company, hereafter called the Supply Company, after denying every allegation in the petition, avers, first, that on August 3, 1911, that it, the Supply Company, had made an assignment of all of its property, real and personal, for the benefit of its creditors; that plaintiff agreed to the assignment and agreed to accept in full payment of its claim against the company a proportionate share of the money received from the sale of the property of the company and released the company from all obligation to it. Admitting that it is a subcontractor under Tonkins, the original contractor, for the construction of the house for Stockstrom, and that it purchased some of the millwork used in the construction of the house from plaintiff, the answer avers that it was purchased on the sole credit of the defendant Supply Company, which at the time had a running account with plaintiff, and that defendant Tonkins had paid defendant in full for the millwork furnished by it under the subcontract, and that since said payment by Tonkins, the Supply Company has paid plaintiff more than the amount claimed by plaintiff on account of the millwork.

A reply was filed to this, denying that plaintiff had agreed to the assignment alleged to have been made by the Supply Company, and denying that it had agreed at any time to accept, in full payment for its claim against the company, a proportionate amount of the money received from the sale of the property of

the company. The reply further denies that the mill-work purchased by the Supply Company from plaintiff and used in the construction of the house, was purchased on the sole credit of the Supply Company, as alleged, but avers that it was sold by plaintiff to defendant, a subcontractor under Tonkins, the original contractor, for and to be used in the building, and on the faith of the building, and on the faith of the subcontract had by the Supply Company with Tonkins, as alleged, and that the defendant Supply Company did so purchase the millwork for the building and on the faith thereof and on the faith of its subcontract for the building. It is further set up in the reply "that if, and although" defendant Tonkins had paid the Supply Company in full for the millwork furnished by it under its subcontract, it is immaterial to the issues in this case, plaintiff denying that since the payment by Tonkins to the Supply Company, as alleged, or at any other time, defendant Supply Company has paid to plaintiff more than the amount claimed by plaintiff on account of the millwork.

The cause was tried before the court, a jury being waived, and resulted in a finding in favor of plaintiff for the amount claimed, less $3.14, being an item charged in the account for material sold but not used in the building, for which plaintiff gave a voluntary credit at the trial, the court also adjudging a lien for the amount found against the building and the one acre of ground on which it is situated, as the property of defendant Stockstrom. A motion for new trial was filed by defendants Tonkins and the Supply Company and overruled, and both of these defendants have appealed.

The points made here for reversal are four: First, that the account against the Supply Company is an open, running, account for materials sold on the sole credit of the Supply Company and is against the Sup-

ply Company alone and is not lienable. Second, the account filed with the petition is not a true and just account for the reason that respondent failed and refused to credit the Stockstrom items with $250, or any part of it, which had been paid by Tonkins, although it had credited its whole account against the Supply Company with this item. Third, that the respondent having been allowed a part of its general account, as shown by its ledger, against the assigned estate, is bound thereby both under the law and the positive terms of the deed of assignment. Fourth, that being so bound, respondent cannot recover against the Kirkwood Manufacturing & Supply Company on the selected items and is therefore not entitled to a lien in this case on the Stockstrom house.

It is very earnestly argued that this being an open, running, account between respondent and the Supply Company, in which there was contained three items that went into this Stockstrom house, and as these items had not been marked as being for that house until just before filing the lien, and as there was nothing in the record, or account, or statement, as entered by respondent against the Supply Company, in which it appears that any of the items in this running account between it and the Supply Company were sold for the Stockstrom house, that the account itself negatives the idea that the items were sold on account of the house. It is sufficient to say that there was evidence introduced tending to show that some time in December, 1910, and later, in February, 1911, a salesman of respondent called at the mill of the Supply Company, at its request, to figure on items that he was told would be wanted by the Supply Company, if they bid on the Stockstrom job; that the items were taken off of the plans for that improvement, which were exhibited to this salesman, the sizes and description verified from these plans; that this salesman had gone out to the Kirkwood of-

fice of the Supply Company on a request from the president or manager of that company by telephone, that he come out and figure on this work; that he had figured on it at the request of the president of the Supply Company, first figuring on it in December, when he had figured on some columns that were to go into the Stockstrom building. It was after this, and in February, according to this witness, that he was asked to go out and examine the proposed job, he being given to understand that the Supply Company wanted him to give it the figures so that the Supply Company could get the job, which included certain columns and balustrades and railings for porches. The salesman testified that he gave the figures on the mill work, and the president of the Supply Company gave this salesman of respondent an order for the stuff, and the salesman went back to respondent's mill and made out and sent the Supply Company a copy of the order which he had taken. This was substantial evidence warranting the trial court in finding that the articles embraced in the lien account were furnished for use in the Stockstrom house, and the trial court having found as it did on this, a question of fact, its conclusion is binding upon us.

The second point, as to whether the credit of $250 was to be applied to the Stockstrom items or on the general account, is also met by evidence tending to show that when this $250 was transmitted by the Supply Company to respondent, it was by letter, with directions to apply it as a credit to the general account of the Supply Company. The respondent accordingly applied it to the oldest items of that account, and that did not include or reach the items furnished for the Stockstrom house. It is hardly necessary to cite authority on the proposition that when no specific directions are given by the debtor to the contrary, the option is with the creditor to apply payments at its own discretion. We recently passed

upon this same proposition in Wilson, Reheis, Rolfes Lumber Co. v. Ware, 150 Mo. App. 61, l. c. 71, 130 S. W. 822, as also in Wilson, Reheis, Rolfes Lumber Co. v. Watson, 158 Mo. App. 179, l. c. 186, 138 S. W. 690. Here again we are bound by the finding of the trial court that the creditor had applied this payment to the oldest account, authorized so to do by the letter of the Supply Company when it transmitted the $250 to it.

Evidence was offered by appellants that a number of days afterward and after application of the credit, that an agent of the Supply Company, in a conversation with one of the officers or agents of respondent, did tell him that they desired that item to apply to the Stockstrom account. This was excluded by the trial court on the ground that it came too late, having been made after the respondent had already applied the credit. We see no error in this action of the court. Payment was transmitted by letter on June 17th, and the attempted change in the direction for its application was not made until "toward the end of July," and after the agent of the Supply Company was told that the respondent claimed a lien on the Stockstrom property. That was too late. The debtor had then no right to compel the creditor to change the application of the credit. There is therefore no ground for the contention either that the $250 should have been applied to the Stockstrom account, or that the account exhibited was not "a just and true account, in that it omitted a credit for that sum." So the trial court found and its finding on this is conclusive on us.

Beyond this item, the only error in the account was an item of $3.14, which, at the trial, it developing that while it was sold to the Supply Company, it had not gone into the construction of the building. Respondent at the trial allowed it as a credit, and the court did likewise. It cannot be said that this item had

been fraudulently added into the account for the mere purpose of swelling it, and the fact that it was improperly entered there did not militate against the fact that the account filed was a just and true account. The account introduced in evidence by the respondent, was a general running account which included these Stockstrom items, but as it appears from the evidence and from the supplemental abstract, these ledger accounts were lump sums, and evidence introduced by respondent was sufficient to explain and identify them as having gone into the reconstruction and work on the Stockstrom house. The account filed with the lien was that much of the general account only as covered the items which went into the Stockstrom building.

The third proposition, that respondent having presented and been allowed a part of its general account against the assigned estate, is bound thereby, proceeds upon the hypothesis that excluding the Stockstrom items from that account is splitting of accounts, of causes of action. As to this, it is said, in the first place, that the assignment relied upon is not an assignment under the statute and has not the binding force and effect of a statutory assignment. It does not appear to have been executed under the provisions of our assignment law (Chapter 8, Revised Statutes 1909), nor to have been acted upon under that law. Therefore, Kendrick v. Guthrie Manufacturing Co., 60 Mo. App. 22; Hayden Slate Co. v. National Cornice & Iron Co., 62 Mo. App. 569; Eppright v. Kauffman, 90 Mo. 25, 1 S. W. 736; Nanson v. Jacob, 93 Mo. 331, 6 S. W. 246; Roan v. Winn, 93 Mo. 503, 4 S. W. 736, and the like, are not here applicable. All these cases are statutory assignments, where the finding of the assignee has the force and effect of a judgment. [Revised Statutes 1909, sec. 918.] The assignment before us not being, nor purporting to be,

under the statute, is binding upon the parties to it only so far as they accepted it.

In point of fact the Supply Company did not plead that the account had been presented to the trustees in the assignment for allowance, or that it had been allowed and merged into a judgment. The plea is, that the Supply Company had, on a day named, made an assignment of all of its property for the benefit of its creditors, that the respondent agreed to the assignment and agreed to accept in full payment for its claim against the Supply Company, a proportionate share of the money received from the sale of the property of the Supply Company and to release that company from all obligation to it. This is no plea of an allowance under the statute, having the force of a judgment.

In the second place, there is no evidence in the case that the respondent ever accepted it as an assignment including all of its accounts against the Supply Company, and that was in issue. There is evidence that when respondent presented its account for allowance to the trustees named in the deed of assignment, it distinctly stated that it only presented its account outside of this lien account. So that there is evidence that it never assented to the assignment, beyond what it is actually shown that it did accept it for, that is, for items other than this lienable item in that account.

As we understand the decisions by our courts, a general account may be split up for the purpose of obtaining a mechanic's lien on a part of it, and the general rule as to splitting demands does not apply to actions on mechanic's liens. So it is held by the Kansas City Court of Appeals in Ridge v. Mercantile Loan & Trust Co., 56 Mo. App. 155. So also our court held in Aimee Realty Co. v. Haller, 128 Mo. App. 66, 106 S. W. 588, and in Wilson, Reheis, Rolfes Lumber Co. v. Ware, supra. In this latter case material had

been furnished for four buildings, the material all purchased and furnished together, but our court held that the account might be split and a lien enforced against two of the buildings, if the material which went into those buildings could be indentified. In the case at bar, very clearly, the general rule against the splitting of accounts ought not to apply here. The general account, it is true, is against the Supply Company. But the one here involved is against not only that company, but against two others, who had no connection with the general account.

This disposes of the fourth point made by learned counsel for appellants, that for the reasons urged by them there can be no recovery against the Supply Company on these items, "selected items," as they are called, for it here appears that those items all went into this house of the defendant Stockstrom. So the trial court found, it finding that the lien account covered material furnished for that building, in response to, at the request of, and under a contract with, the agent of the owner so to furnish the materials. As it has been many times held, the evidence necessary to establish the lien for the material or work and labor is sufficient to carry the lien, if it appears, that the materialman had furnished his material, or that the laborer had done his labor, on the faith of that building or, more accurately, with the intention to claim a lien on the building for the material and labor that went into its construction. [Revised Statutes 1909, sec. 4203; Darlington Lumber Co. v. Pottinger, 165 Mo. App. 443, l. c. 452, 147 S. W. 179.]

We see no reversible error in the action of the trial court in this case and its judgment is affirmed. *Nortoni* and *Allen, JJ.,* concur.